IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DESIGN GAPS, INC., DAVID GLOVER, and EVA GLOVER | Civil Action No. 2:22-CV-4698-RMG |
| Petitioners | |
| vs. | **PETITION FOR VACATUR OF ARBITRATION AWARD** |
| SHELTER, LLC, DR. JASON HIGHSMITH, and KACIE M. HIGHSMITH | |
| Respondents. | |

Above-named Petitioners Design Gaps, Inc. (hereinafter "Design Gaps"), David Glover (hereinafter "Petitioner David Glover"), and Eva Glover (hereinafter "Petitioner Eva Glover") (wherein all Petitioners are collectively referred to as "Petitioners"), hereby petition for an order pursuant to the Federal Arbitration Act ("FAA") under 9 U.S.C. § 10 vacating an arbitration award issued on October 7, 2022 (the "Award") by Thomas H. Coker, Jr. ("Arbitrator"), an arbitrator appointed by the American Arbitration Association ("AAA") in Case No. 01-21-0004-8211 ("Arbitration"). Petitioners were the Respondents in the subject Arbitration. Respondents Shelter, LLC (hereinafter "Shelter"), Dr. Jason Highsmith (hereinafter "Respondent Jason Highsmith"), and Kacie M. Highsmith (hereinafter "Respondent Kacie Highsmith" both Respondent Jason Highsmith and Respondent Kacie Highsmith collectively referred to herein as "Respondent Highsmiths") were the Claimants in the subject Arbitration.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331 and pursuant to 9 U.S.C. §§ 1-16.

2.      Venue is proper in this District for the reason that the arbitration award was made pursuant to an arbitration hearing held in Charleston, South Carolina and 9 U.S.C. § 10 of the FAA requires the United States court in the district where the award was made to make an order vacating the award upon application of any party to the arbitration.

3.      The Court has personal jurisdiction over Respondents, who are citizens and residents of South Carolina or who conduct substantial business, and have their principal place of business, in South Carolina.

**THE PARTIES**

4.      Design Gaps, Inc. (hereinafter "Design Gaps"), Respondent in the Arbitration, is a North Carolina corporation registered as a foreign corporation in South Carolina with a principal place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

5.      Petitioner David Glover, a Respondent in the Arbitration, in his capacity as an Officer of Design Gaps, Inc. has a place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

6.      Petitioner Eva Glover, a Respondent in the Arbitration, in her capacity as an Officer of Design Gaps, Inc. has a place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

7.      Respondent Shelter, LLC d/b/a Shelter Custom-Built Living, a Claimant in the Arbitration, is a South Carolina limited liability company having a place of business located at 895 Island Park Drive, Suite 203, Daniel Island, South Carolina 29492.

8.      Respondent Jason Highsmith, a Claimant in the Arbitration, in his individual capacity having an address at 376 Ralston Creek Street, Daniel Island, South Carolina 29492.

2

9.      Respondent Kacie Highsmith, a Claimant in the Arbitration, in her individual capacity having an address at 376 Ralston Creek Street, Daniel Island, South Carolina 29492.

## THE AWARD

10.      Respondents as Claimants in the Arbitration filed an AAA arbitration demand against Petitioners for breach of contract, promissory estoppel, and piercing the corporate veil. (A true and correct copy is attached hereto as Exhibit A.) Petitioners counterclaimed for negligence, breach of contract, fraudulent misrepresentation, failure to mitigate damages, tortious interference, civil conspiracy, conversion, unfair and deceptive trade practices, quasi-contract, and violation of the copyright act. (A true and correct copy is attached hereto as Exhibit B.)

11.      Respondents entered two contracts in August and September 2020 with Design Gaps to design and install various cabinet systems and the master closets ("Contracts") at Respondents' residence located at 376 Ralston Creek Street, Daniel Island, South Carolina ("Residence"). The first contract, dated August 18, 2020, was for $234,602.35 and was executed between Respondent Highsmiths, Shelter and Design Gaps to provide cabinets in the kitchen, pantry, office, mudroom, various vanities, laundry, and game room bar of Residence. (A true and correct copy is attached hereto as Exhibit C.) The second contract, dated August 18, 2020, and signed September 6, 2020, was for $97,634.59 and was executed only between Respondent Highsmiths and Design Gaps to provide his-and-her master closets. (A true and correct copy is attached hereto as Exhibit D.) The Contracts were silent with respect to any completion date.

12.      The Respondent Highsmiths originally contracted with A Closet Case in Daniel Island to design and install the his-and-her master closets sometime in July 2020. Unhappy with the A Closet Case quality soon after the A Closet Case installation, Respondent Highsmiths contacted Design Gaps who had installed Downsview Kitchens cabinetry for the master bath and

closets in Respondent Highsmiths' previous home a few years prior to this installation. (A true and correct copy is attached hereto as Exhibit E.)

13.    Respondent Highsmiths chose Design Gaps' lower price line of cabinetry instead of the higher end Downsview Kitchens line offered by Design Gaps. Similarly, Respondent Highsmiths had selected the lower price line for the earlier contract for the Main House cabinetry at the urging of Jenny Butler, Respondent Shelter's product coordinator. Respondent Highsmiths paid Design Gaps on September 6, 2020, in the amount of $97,634.59 to redesign and provide all new cabinetry for the his-and-her master closets.

14.    When Design Gaps was substantially complete with installation of the his-and-her master closet at the Residence and had arranged for the delivery of all cabinetries at the Residence, Design Gaps reiterated its request for payment for the materials pursuant the terms and conditions of the Contracts. Instead of paying in accordance with the contract terms, the Respondent Highsmiths terminated Design Gaps through an email sent by their attorney within a few days following the request for payment on May 14, 2021.  Upon information and belief, the Respondents realized that they had already committed to order Distinctive Design's Master closet cabinetry from drawings dated March 21, 2021. The Respondent Highsmiths used the $97,634.59 completed Design Gaps Master Closet cabinetry while living in the home until the third set of closet cabinets provided by Distinctive Design in the amount of $182,828.00 came in the following January 2022.

15.    Shelter and Respondent Kacie Highsmith have acknowledged that the designs that were to be placed in the Residence were provided by Design Gaps and remained the property of Design Gaps.[1] Nonetheless, Shelter confirmed that Brian Reiss of Distinctive Design who was

---

[1] Kacie Highsmith Dep. 20:14–23, Mar. 9, 2022 (cited portion of transcript included as Exhibit F).

4

doing several projects for Shelter and cabinetry for a garage addition at the Residence[2] allowed Brian Reiss to have access to Design Gaps' designs when forwarded without permission via email by Jenny Butler of Shelter on January 19, 2021.[3]

16.    The merits hearing on the claims and counterclaims was held on May 26-27 and June 2, 2022. In the Interim Award of the Arbitrator issued on July 19, 2022, the Arbitrator determined that Respondents were entitled to recover $152,884.00 from Design Gaps alleging Respondents had paid $274,647.00 to Distinctive Design that would then be reduced by $121,763.00 allegedly for increased costs due to a different selection of materials and improvements authorized by the Respondents. (A true and correct copy is attached hereto as Exhibit G.) Respondents timely filed a Motion to Reconsider and Request for Reasoned Award on August 19, 2022. (A true and correct copy is attached hereto as Exhibit H.)

17.    In the Arbitrator's Final Award issued on Augusts 19, 2022, in addition to the $152,884.00 award included in the Interim Award of the Arbitrator, the Arbitrator also awarded Respondents $143,525.17 for reasonable attorneys' fees and costs associated with the arbitration. (A true and correct copy is attached hereto as Exhibit I.) The Arbitrator's total award to Respondents was $296,409.17 without addressing any of the arguments provided by Respondents in their Motion to Reconsider and Request for Reasoned Award.

18.    Without determining whether the finished product had directly been copied from and/or bears substantial similarity to Petitioners' copyrighted work, a prerequisite according to the Fourth Circuit Court of Appeals, the Arbitrator merely asserted that Respondents had established fair use of the design work as supported by an unprecedented determination that Shelter did not

---

[2] *Id.* at p. 30, ll. 3-8.
[3] *Id.* at p. 32, l. 11 to p. 33, l. 4.

profit from the design and further alleging that sharing of a pdf of the design did not impair the marketability of the design.

## GROUNDS FOR VACATUR

### A.    Evident Partiality in the Arbitrator

19.    Pursuant to 9 U.S.C. § 10(a)(2), an order vacating the award may be made "where there was evident partiality or corruption in the arbitrators." As demonstrated herein, the Arbitrator exhibited partiality that was in favor of the Respondents and against the Petitioners in this Arbitration.

20.    The Arbitrator consistently took actions and made statements opposing Petitioner David Glover as a *pro se* Respondent in not only the representation of himself but also in the representation of Design Gaps and Petitioner Eva Glover as Respondents in the Arbitration.

21.    The Arbitrator vigorously objected to Petitioner David Glover's representation of Design Gaps and Petitioner Eva Glover in the Arbitration. The Arbitrator's incessance with Petitioner David Glover acting not only in a pro se capacity for himself but also on behalf of Design Gaps and Petitioner Eva Glover was demonstrated in the questionnaire that he submitted to the parties seeking a response on why this arrangement was not appropriate. The questionnaire along with Petitioner David Glover's responses have been included as Exhibit J.

22.    The Arbitrator raised the following issues in the questionnaire he submitted. (Notably, Respondents chose not to respond to the Arbitrator's questionnaire.)

(1) The Arbitrator stated that *Renaissance* makes clear that the only judicial proceeding where a corporation can represent itself is before a magistrate court.[4]

The Arbitrator argued that the jurisdictional limit of a magistrate court is $7,500 where the amount in controversy in the Arbitration is in excess of $200,000 from Claimant's perspective and $120,000 from Respondent's perspective. The parties

---

[4] *Renaissance Enterprises, Inc. v. Summit Teleservice, Inc.*, 515 S.E.2d 257 (S.C. 1999).

to this matter are "ongoing corporate entities."

"[A] South Carolina court would apply *Renaissance* to arbitrations."

"I find no opinion from a South Carolina court authorizing a corporation to proceed pro se in an arbitration and I cannot find any persuasive opinion in any other jurisdiction supporting that conclusion."

(2) "[T]he South Carolina Supreme Court has made clear that public policy does not support the unauthorized practice of law. Public policy was significant to the state Supreme Court in reaching it's holding in Renaissance and it rejects the minority of courts that allow *pro se* representation in court."

(3) the Supreme Court ... rejected the ability of a non-lawyer personal representative of an estate to serve as an advocate for the estate. In Coe, the court notes that non-lawyers cannot negotiate criminal pleas and reiterates the public policy in this state seeking to protect the public from "severe economic and emotional consequences" flowing from legal advice "given by persons untrained in the law."[5] (Quotations provide by Arbitrator.)

(4) The Arbitrator stated that he recognized "that this proceeding is not a judicial proceeding, but it is a *quasi* judicial proceeding that will ultimately become a judicial proceeding when the final award/order in this matter is sought to be confirmed." The Arbitrator continued that "it is but a matter of time before counsel will be required on behalf of Respondent" and admitted "this technical legal issue could be argued to a judge in the future confirmation process in an effort to overturn my decision in this matter — whatever it may be — for which one party or the other could be dissatisfied."

(5) The Arbitrator noted another case where it was determined the "practice of law was not confined to litigation but extends to activities in other fields which entail specialized legal knowledge and ability."[6]

The Arbitrator further cited a non-jurisdictional case where it was determined that "what constitutes the practice of law must be decided on the facts and in the context of each individual case."[7]

23.    Clearly, the Arbitrator was focused upon the representation of a corporation in a judicial proceeding and not in an arbitration setting.

24.    The Arbitrator finally concluded"

*In light of the totality of the circumstances, I do not agree with Respondent's*

---

[5] *Brown v. Coe*, 616 S.E.2d 705 (S.C. 2005).
[6] *Roberts v. LaConey*, 650 S.E.2d 474 (S.C. 2007)
[7] *Nisha, LLC v. TriBuilt Constr. Group, LLC*, 388 S.W.3d 444 (Ark. 2012).

*arguments in favor of pro se corporate representation in light of Renaissance and Coe and cannot trump public policy or the law. Given the foregoing, and the fact that a South Carolina court has not directly ruled on this issue, the undersigned is placed in the unenviable position of having to predict South Carolina law on this subject. I conclude that a South Carolina Court is more likely than not to hold under the facts presented and the character of the services sought to be provided ... lead to the conclusion that a corporate Respondent must be represented by counsel in an arbitration.*

*To that end, and in the spirit of Coe, Respondent shall have 30 days to retain counsel in this matter and must do so on or before _____ and that counsel shall file a notice of appearance with the AAA on or before the deadline.*

25.     Petitioner David Glover sought the opinion of Mr. John Nichols, the lawyer charged by the Supreme Court of South Carolina to receive, screen, investigate, and, as necessary, prosecute the complaints made against both judges and lawyers, with the Office of Disciplinary Counsel of the South Carolina Supreme Court. Mr. Nichols determined that it is not considered practicing law when a *pro se* party represents another individual or corporation in an arbitration, which is non-judicial in nature and between private parties. Petitioner David Glover provided this information in an email responding to a lengthy questionnaire sent by the Arbitrator where, as demonstrated above, cited several court cases in support of his position that Petitioner David Glover could not represent the other Petitioners.[8]

26.     The Arbitrator did not inform Petitioner David Glover of his decision to allow Petitioner David Glover to represent Design Gaps and Petitioner Eva Glover in the Arbitration until five months after submission of the questionnaire. Asheen Patel of AAA provided a message from the Arbitrator which stated the following:

*With respect to the questions about Mr. Glover's acting as attorney for Design Gaps, I have received the following information from Nichole Davis o the South Carolina Bar:*

*"The Committee discussed your inquiry on Friday and declined to issue an opinion.*

---

[8] David Glover email correspondence to AAA Jalisa Hardrick, Andrew Walden and Eve Glover, "FW: Shelter, LLC v. Design Gaps, Inc., Eva Glover - Case 01-21-0004-8211", Sep. 28, 2021 (included in Exhibit J).

*The members came to the conclusion that your inquiry falls outside of their scope of authority."*

*I also have Mr. Glover's email correspondence with the South Carolina Bar concerning this matter. It appears that the Bar has no objection to Mr. Glover continuing in his current role on this case. It further appears that the parties and arbitrator have satisfied any ethical concerns regarding this matter. It therefore appears that Mr. Glover may continue.*

27.     The attorney for the Respondents only agreed to an extension of time for the Arbitration proceeding if the Arbitrator determined that Respondents needed to seek counsel for the representation of Design Gaps and perhaps Petitioner Eva Glover.[9]

28.     The Arbitrator's five-month delay in reporting his decision that Petitioner David Glover could represent the other Petitioners led. Petitioner David Glover's uncertainty of whether he could act on behalf of the other Petitioners in the Arbitration significantly jeopardized his ability to effectively continue with discovery and prepare for the Arbitration. Notwithstanding the Arbitrator was the primary delay in arriving at this decision, the Arbitrator did not grant Petitioners additional time to prepare their case, clearly a decision that favored Respondents who were represented by counsel.

29.     The Arbitrator did subsequently grant an extension-of-time but only in response to Petitioners' Motion of Continuance to allow Petitioners additional time to receive additional discovery documents requested from attorney from Respondents that had not yet been received.

30.     Over the course of Petitioners' defense presentation, it was observed that the Arbitrator was texting or dealing with emails on this mobile phone while he was sitting behind his laptop even when he otherwise used a legal pad for notetaking over the course of Respondents' case in chief.

---

[9] Andrew Walden email correspondence to AAA Jalisa Hardrick, David Glover and Eve Glover, "RE: Shelter, LLC v. Design Gaps, Inc., Eva Glover - Case 01-21-0004-8211", Sep. 29, 2021 (included in Exhibit J).

31.     As further discussed herein, the Arbitrator failed to provide a reasoned award with respect to the defenses and counterclaims submitted by Petitioners.

32.     Upon review of the eighty-two (82) pages of Petitioner's closing arguments and the Arbitrator's Interim and Final Awards shows the Arbitrator chose not to use any of the arguments provided by the Petitioners.

33.     Additionally, in response to the Arbitrator's Interim Award, Petitioners prepared a concise Motion to Reconsider and Request for Reasoned Award upon recognition that the Arbitrator showed a manifest disregard of the law and failed to provide a reasoned award as agreed to by the parties.  The Arbitrator chose not to provide an express ruling on the Petitioner's motion.

34.     It has become more than clear that the approach taken by the Arbitrator over the course of the Arbitration demonstrated partiality in favor of the Respondents that were represented by counsel over the Petitioners that were represented by an individual acting in a *pro se* capacity. The favoritism demonstrated by the Arbitrator over the course of arguing that person acting in a *pro se* capacity could not represent the other Petitioners in the Arbitration. Such partiality is proscribed by § 10(a)(2) of the FAA.

**B.     Arbitrator's Manifest Disregard for the Law**

35.     "Manifest disregard is … an old yet enigmatic ground for overturning arbitral awards."[10] The manifest disregard standard requires "a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it."[11] "[M]anifest disregard exists either as an independent ground for review or as a judicial gloss on the enumerated

---

[10] *Wachovia Sec., LLC v. Brand,* 33 IER Cases 679, 671 F.3d 472 (4th Cir. 2012)
[11] *Id.* at 483.

grounds for vacatur set forth at 9 U.S.C. § 10."[12]

36.     A court may vacate an award based on an arbitrator's manifest disregard of the law when "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle."[13] As further demonstrated herein, the Arbitrator has manifestly disregarded the law and ignored established precedent with respect to Petitioners' Copyrighted materials, and materially prejudiced Petitioners' rights in the same, and Petitioners' substantial completion of the work embodied in the Contracts.

### 1. Overview of Arbitrator's Knowledge and Experience

37.     The Arbitrator was admitted to the South Carolina Bar in 1976 and has been practicing with Haynsworth Sinkler Boyd, P.A. ("Law Firm") as well as a predecessor firm since that time.

38.     The Arbitrator indicates his experience includes the representation of "contractors and architects in arbitration proceedings[; arbitration of] disputes involving owners, architect, general contractors, subcontractors and contractors[; and mediation of] medical facilities, suppliers, asbestos, property damage and mechanical disputes."

39.     The Law Firm has over one hundred attorneys with some having experience in Copyright Law and some having experience in Contracts & Procurement. Clearly, the Arbitrator has access to attorneys at the Law Firm if he needs additional information concerning these subject areas.

### 2. Arbitrator's Failure to Heed that Providing Petitioners' Copyrighted Architectural Drawings by Shelter and Respondent Highsmiths to Distinctive Design was not Protected by the Fair Use Doctrine is a Manifest Disregard of Well-Established Statutory and Judicial Precedent Concerning the Legal Principle

---

[12] *Animalfeeds* at 699, n. 3.
[13] *Long John Silver's Restaurants, Inc. v. Cole,* 514 F.3d 345, 349 (4th Cir. 2008).

40.    Design Gaps registered the cabinet and closet systems drawings representing the architectural works used at Respondent Highsmiths' Residence under Registration Number VAu001462768 with the United States Copyright Office.

41.    The Respondent Highsmiths argued that they were involved in the design of the cabinet and closet systems but did not provide evidence of authorship of any original work they contributed to the cabinet and closet systems.

42.    The Respondent Highsmiths continued by arguing that since they were provided with copies of the designs that did not indicate copyright ownership, they had a good faith belief that they had rights to use the design. However, the front page of each of the Contracts indicated that "[a]ll designs created remain the sole property of Design Gaps, Inc. and may not be reproduced in whole or in part without the written consent of Design Gaps, Inc." Respondent Highsmiths were aware of who provided the design and who put the design together. It is not mandatory that the work be registered at the time of publication of the work. But, in this case, the copyright owners subsequently registered the work with the United States Copyright Office.

43.    Contrary to Respondent Highsmiths' arguments, the designs provide more than measurement information, they provide architectural drawings showing the overall form as well as the arrangement and composition of spaces and elements in the design. Such elements, according to the Copyright Laws of the United States, are subject to copyright protection.[14]

44.    As Respondent Highsmiths' acknowledge, the statutory requirements used in determining whether the doctrine of fair use applies are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation

---

[14] 17 U.S. Code § 102(a)(8).

to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.[15] The fair use doctrine is to prevent a finding of copyright infringement "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research."[16]

45.     Shelter and, upon information and belief, at the direction of Respondent Highsmiths admit that their use was "merely" providing a PDF of the copyrighted works to Distinctive Design alluding that there was no copyright infringement. Generally, copyright infringement is a strict liability offense, in which a violation does not require a culpable state of mind.[17] However, "knowledge of, or willful blindness to, specific instances of infringement" supports a finding of contributory infringement.[18] Thus, Respondents' willful blindness to the fact that the Petitioners possessed copyright protection in the architectural works is itself an infringement of Petitioners' rights.

46.     Bryan Reiss, the owner of Distinctive Design admitted that what was installed in the field were similar to the closet designs.[19] There were only minor changes to the elevation from the floor plan that was provided by Design Gaps.[20]

47.     Indeed, Respondent Highsmiths admit that their use was not at all transformative in any way. Indeed, the Supreme Court has determined that a "transformative" use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," none of which are applicable here.[21] Certainly, the arbitrator did not

---

[15] 17 U.S. Code § 107.
[16] *Id.*
[17] *CoStar Grp., Inc. v. LoopNet,Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).
[18] *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312 (4th Cir. 2018).
[19] Reiss Dep. 104:1–13, Mar. 10, 2022 (cited portions of transcript included as Exhibit K).
[20] *Id.* at 105:2-20.
[21] *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

consider the transformative nature of Respondent Highsmiths' use when determining their use was subject to the fair use doctrine.

48.     If a use is not transformative, then there must be a showing that the second and third factors weigh in favor of fair use.[22] In assessing the second factor, courts must determine the "thickness" or "thinness" of the author's exclusive rights.[23] The thickness of the rights in visual materials, where architectural works are embodied, typically turn on the extent of creative choices embodied in the work.[24] The Arbitrator failed to provide such reasoned assessment in determining that Respondent Highsmiths' use was subject to the fair use doctrine.

49.     The third factor addresses whether "no more was taken than necessary" to accomplish the user's purpose.[25] In the instant situation, all aspects of the architectural design were taken to accomplish Respondent Highsmiths' purpose. But, again, the Arbitrator did not address this in a reasoned assessment in his determination that Respondent Highsmiths' use was subject to the fair use doctrine.

50.     With respect to the fourth factor, a showing that the architectural work is more than minimally commercial especially without a finding that the use is not transformative in nature, the use that exists in this instance, supports a finding that the potential mark for the value of the copyrighted work is affected.[26]

51.     Clearly, each of the factors of the statutory test as further defined by court precedence for fair use fails to support a finding of fair use, and the Arbitrator has ignored this well-established legal principle in finding that Respondent Highsmiths' infringing use is subject

---

[22] *Bouchat v. Balt. Ravens Ltd.*, 737 F.3d 932, 936 (4th Cir. 2014).
[23] *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 266 (4th Cir. 2019).
[24] *Id.* at 267.
[25] *Campbell*, 510 U.S. at 589, 114 S.Ct. 1164.
[26] *Bouchat*, 737 F.3d at 936.

to the fair use doctrine.

52.     The materials and pleadings filed by the parties fully informed the Arbitrator of the applicable law in the matters to be considered. The Arbitrator either was aware of or had access to attorneys who have knowledge of Copyright Law, and the Arbitrator willfully flouted the governing law by refusing to apply it. Therefore, the Arbitrator has manifestly disregarded this clearly defined legal principle in Copyright Law that is not subject to reasonable debate.

**3. Arbitrator's Failure to Heed that Petitioners' Performance Under the Contracts and Find Respondents in Material Breach of the Contracts is a Manifest Disregard of Well-Established Black Letter Law Concerning the Legal Principle**

53.     Design Gaps had entered the Contracts with Respondent Highsmiths for cabinetry at the Residence that totaled $332,236.94. Respondent Highsmiths only paid $264,935.77 to Design Gaps leaving them with a balance of $55,588.94 for cabinetry and materials and a balance for final installation in the amount of $11,712.23 or a total amount owed to Design Gaps in the amount of $67,301.17.

54.     Petitioner David Glover received emails from Andrew Walden, counsel for Respondent Highsmiths around May 14, 2021, terminating Design Gaps access to the Residence. The Contracts did not include any provision concerning completion date for the materials to be delivered and work to be performed.

55.     Petitioners had ordered all materials and had a contractor on site to complete installation of same. Therefore, Petitioners substantially performed in good faith the provision of the materials as they were proceeding to installation under the Contracts whereby such purchases were in compliance with the Contracts.

56.     Rather, it was Respondent Highsmiths that decided they wanted to upgrade the materials over those specified in the Contracts and they breached the Contracts with Petitioners so

15

that they could engage Distinctive Design to use the layout provided by Design Gaps but provide what Respondent Highsmiths considered were high quality materials.[27]

57.     The Contracts provided that the right of possession to, and ownership of all goods and merchandise furnished under the Contracts remains the property of Design Gaps until all payments required to be made under the Contracts is made by the Buyer.

58.     It is a well-established premise of South Carolina law that if subsequent to the execution of the contract, the purchaser breaches the contract, the seller shall have the right to declare this contract null and void and retain from the earnest money its actual damages caused by purchaser but shall not be precluded from pursuing any other rights the seller might have at law or in equity.[28] Indeed, the Supreme Court has stated that it is not necessary that the plaintiff have fully and completely performed every item specified in the contract between the parties, but it is sufficient if there has been substantial performance, not necessarily full performance, so long as the substantial performance was in good faith and in compliance with the contract.[29]

59.     Respondent Highsmiths failure to pay the Contracts in full to Petitioners, according to the terms of the Contracts resulted in a material breach of the Contracts by Respondent Highsmiths. Pursuant to well-settled South Carolina law, Petitioners as sellers were left with the right to declare the Contracts null and void and retain from the earnest money its actual damages caused by Respondent Highsmiths' breach.

60.     The Arbitrator failed to consider and provide a reasoned assessment that the refusal of Respondent Highsmiths' to continue to pay Design Gaps was itself a breach that would have allowed Petitioners to declare the Contracts null and void and retain from the earnest money their

---

[27] Reiss Dep. 120:1–121:8.
[28] *Richman Enterprises, Ltd. v. Pamplin*, 79 F.3d 1141 (4th Cir. 1995).
[29] *Salve Regina College v. Russell*, 499 U.S. 225. 229, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)

16

actual damages caused by Respondent Highsmiths' breach.

61.     Furthermore, the Arbitrator failed to consider that on January 14, 2021, the Respondent Highsmiths transferred their interest in the Residence to the Kacie M Highsmith Trust dated December 18th, 2020. Respondent Kacie Highsmith was the Trustee of the said Trust. With Respondent Highsmiths loss in ownership of the Residence, their standing to even bring the arbitration was called into question by Petitioners. However, the Arbitrator chose not to even make a reasoned assessment on this rule of law.

62.     The materials and pleadings filed by the parties fully informed the Arbitrator of the applicable law in the matters to be considered. The Arbitrator admits that he is aware of or had access to attorneys who have knowledge of Construction Contracts & Procurement Law, and the Arbitrator willfully flouted the governing law by refusing to apply it. This is a well-established principle that is clearly defined and not subject to reasonable debate, and the Arbitrator's refusal to heed that legal principle in Construction Contracts & Procurement Law demonstrates a manifest disregard of the law.

C.     **Arbitrator Imperfectly Executed His Powers Such That a Mutual, Final, and Definite Award Upon the Subject Matter Submitted was not Made**

63.     Pursuant to 9 U.S.C. § 10(a)(4), an order vacating the award may be made "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." As further demonstrated herein, the Arbitrator has failed to provide a reasoned award as agreed to by the parties prior to the start of the arbitration as reported in the Report of Preliminary Hearing and Scheduling Order signed by the Arbitrator on September 30, 2021.

64.     In enforcing an agreement to arbitrate or construing an arbitration clause, courts

and arbitrators must give effect to the contractual rights and expectations of the parties.[30]

65.    An arbitrator's decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers" when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.[31]

66.    As discussed in the previous section, the Arbitrator failed to provide a legal assessment concerning the four-factor test for determining fair use. Instead, the Arbitrator arbitrarily decided that Respondents providing Petitioners' architectural design to Distinctive Design was subject to the fair use doctrine. However, as demonstrated above, such a determination is exaggerated, incorrect and manifestly deprives Petitioners of copyright legal protections in their works. The failure of the Arbitrator to provide the reasoned assessment and award demonstrates that a mutual, final, and definite award upon the subject matter submitted was not made and is clearly proscribed by § 10(a)(4) of the FAA.

67.    Furthermore, the Arbitrator failed to assess and recognize the Respondent Highsmiths breached the Contracts they entered with Design Gaps. Such contracts did not provide a time for when installation was to be complete. Indeed, as argued above, Petitioners had substantially performed most of the work through the design they provided to Respondents and the materials that they ordered to complete the installation. The Respondents' Expert Witness testified at the hearing the Petitioners were Substantially Complete with the cabinet installation and cabinet contracts prior to Petitioners being terminated on May 14th, 2021. Installation was under review and to commence at the time that Respondent Highsmiths decided to breach the Contracts. Again, the Arbitrator's failure to provide a concise written breakdown for the award

---

[30] *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 1774, 176 L.Ed.2d 605 (2010).
[31] *Id.* at 1767.

that addresses the disposition of Respondent Highsmiths' claim that Petitioners had breached the Contracts further demonstrates the Arbitrator's failure to provide a reasoned award for all claims at issue.

68.     Section R-48(b) of the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures provides that a reasoned award must be provided when "the parties request such an award in writing prior to appointment of the arbitrator." A reasoned award requires the arbitrator to provide a concise written breakdown for the award that addresses the disposition of all the claims and counterclaims submitted.[32] A reasoned award is something short of findings and conclusions but more than a simple result.[33] The parties decided that the Arbitrator was to provide a reasoned award.

69.     As provided herein, the Arbitrator failed to provide a reasoned award concerning the Petitioners' affirmative defenses, at least one of Respondents' claims and at least two of Petitioners' counterclaims. Such failures demonstrate that the Arbitrator did not give effect to the contractual rights and expectations of the parties, which is proscribed by 9 U.S.C. § 10(a)(4)

**CONCLUSION**

70.     Upon the showing that the Arbitrator demonstrated evident partiality in favor of Respondents and against Petitioners, a manifest disregard of the law with respect to Petitioners' counterclaims of copyright infringement and Respondents' breach of the Contracts, and imperfect execution such that a mutual, final, and definite award upon the subject matter submitted was not made, Petitioners herein respectfully request the Arbitrator's award be vacated.

---

[32] *U.S. for the Use v. P. Browne & Associates Inc.*, 771 F.Supp.2d 576, 582 (D. S.C. 2010).
[33] American Insurance Managers, Inc. v. Guarantee Ins. Co., C/A No. 1:07-CV-1615-MBS (D. S.C. 2011).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth herein and award Plaintiffs relief for the following:

a)      That the October 7, 2022 Award be vacated for the reason that the Arbitrator exhibited partiality against the Petitioners in the Arbitration in violation of 9 U.S.C. § 10(a)(1).

b)      That the October 7, 2022 Award be vacated, namely, by determining that the arbitrator failed to hear relevant and pertinent evidence on the four factors needed to show application of the Fair Use Doctrine, and that the arbitrator manifestly disregarded the law governing Copyrights and imperfectly executed his powers in construing the parties' Contracts as proscribed by judicial precedent.

c)      The Arbitrator imperfectly executed his powers such that a mutual, final, and definite award upon the subject matter as otherwise agreed to by the parties in violation of 9 U.S.C. § 10(a)(4).

d)      That the parties' dispute be remanded to the AAA for the administration of a new hearing with a new arbitrator that includes receipt of Plaintiffs' expert testimony and application of controlling Federal law on Copyrights and infringement of such; and

e)      That the Court award such other relief as it deems just and proper.

This 29th day of December, 2022.

Respectfully Submitted,

Design Gaps, Inc., David Glover and Eva
Glover
By counsel

By: _s/Todd M. Hess_____

    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    5922 Weddington Rd, Ste A5-195
    Wesley Chapel, NC 28104
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Petitioners*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 29, 2022, Petitioners caused to be served Petitioners' Petition for Vacatur of Arbitration Award on counsel of record during the arbitration proceedings for Respondents via email and United States mail, with due and proper postage affixed thereto, and addressed as follows:

R. Andrew Walden
Womble Bond Dickison (US) LLP
5 Exchange Street
Charleston, SC  29401
andrew.walden@wbd-us.com

This the 29th day of December, 2022

HESS LAW, PLLC

By: /s/ Todd M. Hess
    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    5922 Weddington Rd, Ste A5-195
    Wesley Chapel, NC 28104
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Petitioners*