# EXHIBIT I

# ARBITRATOR'S FINAL AWARD

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

| | |
|---|---|
| Shelter, LLC, Dr. Jason Highsmith, and Kacie Highsmith,<br><br>　　　　　Claimants,<br><br>　　v.<br><br>Design Gaps, Inc., Eva Glover, and David Glover,<br><br>　　　　　Respondents. | AAA Case # 01-21-0004-8211<br><br><br>**ARBITRATOR'S FINAL AWARD** |

　　I, Thomas H. Coker Jr., THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

　　This dispute arises from the renovation of 376 Ralston Creek Street, Daniel Island, South Carolina ("Residence"). In August and September 2020, under two contracts, Claimants hired Respondent Design Gaps, Inc. ("Design Gaps") to design and to install various cabinet systems and the master closets at the Residence. The first contract, dated August 18, 2020, was for $234,602.35 for cabinets in the kitchen, pantry, office, mudroom, various vanities, laundry and game room bar. Respondents' Exhibit 5. The second contract was for $97,634.59, was dated August 18, 2020, and signed September 6, 2020, for his-and-her closets. The Claimants' expressed goal for the time of completion of the project was approximately four to eight weeks from contract signing. Claimants' Exhibit 4. At the time of contracting Respondents indicated that this time frame was achievable. When the project was not completed by May 2021, Claimants terminated both Design Gaps contracts on May 14, 2021. The Claimants then hired Distinctive Design, LLC ("Distinctive Design") to finish the project. Claimants filed a demand for arbitration for breach of contract,

promissory estoppel, fraud, and piercing the corporate veil. The parties agreed that this Arbitration was to address only the claims against Design Gaps and not Eva Glover or David Glover. Those claims were specifically reserved for another forum. Respondent Design Gaps counterclaimed for negligence, breach of contract, fraudulent misrepresentation, failure to mitigate damages, tortious interference, civil conspiracy, conversion, unfair and deceptive trade practices, quasi-contract, and violation of the copyright act.

The merits hearing was conducted on May 26, 27 and June 2, 2022. Claimants were represented by R. Andrew Walden of Womble Bond Dickinson (US) LLP and Respondents were represented *pro se*[1] by David Glover. Claimants called as witnesses Dr. Jason Highsmith, Kacie Highsmith, Ryan Butler, Jenny Butler, Peter Zahorsky, Bryan Reiss, CMKBD, and Evan Heilig. Claimants also entered into evidence the *de bene esse* deposition transcript of Katie Schindler and called Patti Wilbourne as a rebuttal witness. Respondents called David Glover as their only witness. Both sides submitted substantial documentation to support their respective positions. At the conclusion of that testimony, as arbitrator, I asked each side if they had an adequate opportunity to present in full the evidence which they thought was relevant and important for me to consider in rendering my Award. Each side advised that they had adequate opportunity to present their case with all relevant testimony and exhibits. Therefore, the merits hearing was closed and the parties afforded an opportunity to present post-hearing briefs and proposed orders. Each side provided a proposed order on June 17, 2022 and the hearing was closed by the American Arbitration

---

[1] Prior to arbitration, David Glover obtained an opinion from Mr. John Nichols of the South Carolina Supreme Court's Office of Disciplinary Counsel ("ODC") regarding his representation of Respondents. Mr. Nichols noted that the ODC would not construe Mr. Glover's representation of Respondents as the unauthorized practice of law because the arbitration is a non-judicial hearing between private parties. I also inquired with the South Carolina Bar and they declined to issue an opinion on the matter. Claimants did not object and therefore Mr. Glover was allowed to continue with Respondents' representation.

2

Association on June 20, 2022. I have reviewed the testimony and exhibits presented by each party. I now make this Interim Award based upon that evidence.

During the construction process, Design Gaps communicated about completion dates for the installation of the cabinets at the project. These communications started in June and July 2020. It offered the following completion dates to Shelter LLC ("Shelter") and the Highsmiths:

| Date | Description |
|---|---|
| July 12, 2020 | Design Gaps advised:<br>Cabinets on site in six weeks.<br>Lacquered panels a few weeks late<br>Claimants' Exhibit 5 |
| August 2020 | Design Gaps said cabinet delivery October 1, 2020 and October 5, 2020.<br>Claimants' Exhibits 7-8 |
| August 18, 2020 | Cabinet contract executed.<br>Claimants' Exhibit 9 |
| August 18, 2020 | Closet contract lead time eight weeks<br>Claimants' Exhibit 13 |
| September 4, 2020 | Master closets 5 weeks lead time.<br>Claimants' Exhibit 11 |
| October 18, 2020 | Design Gaps begins delivery.<br>Delivery not complete as of December 2020.<br>Testimony and Claimants' Exhibits 16-25 |
| January 21, 2021 | Design Gaps estimates completion within 32.2 man-days.<br>Claimants' Exhibit 27 |
| January 22, 2021 | Design Gaps provides completion date of March 1, 2021.<br>Claimants' Exhibit 28 |
| March 2, 2021 | Owners extend project completion date to March 15, 2021.<br>Claimants' Exhibit 32 |

3

| | |
|---|---|
| March 16, 2021 | Design Gaps commits to completion by end of April 2021. Claimants' Exhibit 32 |
| May 15, 2021 | Design Gaps work not completed. |
| May 15, 2021 | Design Gaps contracts terminated. |

At the time of termination, Claimants had paid Design Gaps $265,236.94 on the two contracts. This left a contract balance on the two contracts of $67,892.28. In order to complete the project, the Highsmiths retained Distinctive Design to provide completion services. *See* Claimants' Exhibit 36. The price for completion was set at $260,736.00. During Distinctive Design's work, its contract price was escalated to $274,647.00. It was paid this amount. Distinctive Design's representative testified that this price included upgraded cabinet quality from that provided in the Design Gaps contract and that the total charges should not be assigned to Design Gaps. Claimants also paid $41,256.75 for refinishing the cabinets. Therefore, the total paid by Claimants to complete the cabinetry was $564,122.09 spent as follows.

| | |
|---|---|
| Paid to Design Gaps | $265,236.94 |
| Paid to Distinctive Design | $274,647.00 |
| Less betterment associated with Premier Custom Cabinetry | ($17,018.60) |
| Paid to Evan Heilig for refinishing | $41,256.75 |
| Total paid to complete Design Gaps contract | $564,122.09 |
| Less Design Gaps contract | $332,236.94 |
| Claimants' cost in excess of Design Gaps contract | $231,885.15 |

4

The most significant increase in Claimants' cost was associated with the cabinets for the his-and-hers closets. The price with Design Gaps for that work was $97,634.59. On May 25, 2021, Distinctive Design's proposed price to complete the his-and-her master dressing closets was $61,543.00. Respondents' Exhibit 47. On June 2, 2021, the Distinctive Design price increased to $182,828.00 using Premier Custom-Built Cabinets. Respondents' Exhibit 48. Distinctive Design had obviously examined the installation by Design Gaps to provide the May 25 price. Claimants recognize that the Premier Custom-Built Cabinetry was betterment and allowed $17,018.60. Examining Distinctive Design pricing, I find that the Claimants' cost attributable to Design Gaps should be the original repair and completion cost of $61,643.00. It therefore appears that this should be the appropriate cost attributed to Design Gaps. I, therefore, find that the cost to be charged to Design Gaps to be $274,647.00, less $121,763.00 for a balance of $152,884.00. This accounts for the upgraded costs.

While the contracts did not contain specified completion dates, Design Gaps did provide a series of completion dates, which it did not meet. During the hearing, Design Gaps set out a number of reasons for the delays which it argued were beyond its control. However, it continued to provide unreliable completion dates to the Claimants. The repeated failure to meet the many dates promised for completion justifies the termination of the contracts.

Claimants also claim that they lost the use of their home for the month of December 2020. The evidence presented at the hearing does not establish that the cost of the loss of use of the house was caused by the failure of Design Gaps to complete its work. The photographs and testimony shows that the house was not ready to be occupied in December 2020. Therefore, I deny this claim.

I therefore find that Claimants are entitled to recover $152,884.00 from Respondents.

I also find that Respondents are entitled to take nothing under their counterclaims. First, Respondents conceded they had not completed its work by May 2021. I find that this arbitration involves contract claims. The parties rights are all set out in the contracts. Design Gaps has received an offset against Claimants' completion costs for its contract balance. That is all it is entitled to receive.

Respondents did not prove any false or reckless representation made by Claimants which caused it any damage; therefore, it is not entitled to anything on these claims. Respondents did not establish any tortious interference in its contract by any party. It further did not establish that there was a civil conspiracy between and among the Claimants, Distinctive Design or any other party. While Claimants did meet with Distinctive Design as early as January 2021 to review Respondents' performance, the Claimants were advised by Distinctive Design to continue working with Design Gaps to achieve completion. When completion had not been accomplished by May 2021, only then did Claimants terminate the contract. Respondents did not establish that Claimants' conduct was unfair or deceptive and therefore cannot sustain an unfair trade practices act claim. Respondents did not establish that the conduct it complains of was repetitive or in violation of the public interest. Finally, since the parties entered a written contract, there cannot be a separate "quasi" contract recovery.

Respondents gave to the Claimants their drawings for the cabinets. Obviously, this was for Claimants' review, approval, and use during the construction process. Claimants were free to use the drawings to measure the compliance of Design Gaps with these drawings and its obligation to install the designed cabinets in accordance with its contractual obligation. Respondents failed to enter into evidence a valid copyright registration; however, even if they had, Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the

6

design. The sharing of a pdf of the design did not materially impair the marketability of the design. Respondents failed to prove that Claimants or anyone else converted its designs for this project. Bryan Reiss of Distinctive Design confirmed that he did not use Design Gaps' designs for the cabinets. I am convinced by Reiss's testimony and the exhibits provided that any similarity in the designs is due to the limitations of the space and the client's desired layout. Therefore, there has been no violation of any copyright which Respondent may have had.

Having reviewed all of the testimony, exhibits, arguments of the parties, pleadings and post-hearing, I find that the Claimants are entitled to an award of $152,884.00 upon their claims.

### Attorney's Fees and Costs

The arbitration provision in each contract expressly provides that the "prevailing party … shall recover its costs of the arbitration and reasonable attorneys' fees from the other party." "Prevailing party" is not defined. When the interim award was entered, the parties were directed to advise me as to which party is deemed to have prevailed and set out a proposed amount for reasonable attorneys' fees and arbitration costs for the prevailing party. They did this.

The parties have submitted their positions with respect to the award of attorney's fees and costs. The contracts in question each contain a provision for the award of costs of the arbitration and reasonable attorney's fees from the other party. Specifically, Article 17 of the Contracts Agreements provide:

> 17. ARBITRATION…the arbitration shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorney's fees from the other party or parties, and (2) the amount of such fees and costs.

Counsel for Shelter, LLC, Dr. Jason Highsmith and Kacie Highsmith, Andrew Walden has submitted his affidavit in support of an award of attorney's fees and costs of $158,832.64 consisting of attorney's fees, and paralegal charges of $130,856.00; and incurred costs of $24,224.13.

7

First, I find that the Claimants are the prevailing party. Their initial filing was for an amount up to $350,000.00. Prior to the hearing, their claim was reduced to $256,716.15. The Respondents asserted a counterclaim seeking stated damages of $67,301.17. Respondent also made claims for tortious interference with contract, violations of various copyright laws, civil conspiracy, conversion, and quasi contract. While Respondents did not define the damages sought for these claims, the damages may have exceeded $67,301.17. The Claimants were required to defend against claims which were significant and may have been in excess of the $67,301.17. While the Claimants are the prevailing party under the standard mechanic's lien definition, their defense costs were increased by their defense of multiple other claims. This means that more effort was required than would be required in a traditional breach of contract arbitration. Here, the counsel for Claimant has submitted its affidavit setting out the hours which it charged. I find that the attorney's fees recoverable are as follows:

|   |   |   |
|---|---|---|
| Andrew Walden | 289.9 hrs @ $388.58/hr = | $112,649.34 |
| Andrea McDonald | 25.6 hrs @ $300.00/hr = | $7,680.00 |
| James Weatherholz | 1.8 hrs @ $580/hr = | $1,044.00 |
| Carol Casey* | 31.6 hrs @ $150/hr = | <u>$4,740.00</u> |
|   | Total: | $126,113.34 |

*I find the hourly rate of $300 per hour for a paralegal exceeds the amount which is reasonable for a matter of this type.*

With respect to the award of expenses, I find that the costs of the arbitration are recoverable. The arbitration costs as presented by Mr. Walden were:

| | |
|---|---|
| Arbitration Filing Fee: | $4,400.00 |
| Arbitration Fee (3/24): | $9,550.00 |

8

        Arbitration Fee (6/17):    $3,501.83

                   Total:    $17,451.83

The contract does not provide for recovery of expenses beyond these amounts. While deposition costs and travel expenses would normally be recoverable in a civil action in court, the contract provision allowing recovery says the costs of the arbitration may be awarded. The deposition costs are not a cost of the arbitration or an attorney's fee. Therefore, I find that these costs are not awardable. Further, the expert fees of Evan Heilig and Distinctive Design and Construction, LLC are expert fees, not costs of an arbitration or an attorney's fee. Therefore, those costs are not recoverable.

I therefore issue an award against Design Gaps, Inc. in the amount of $152,884.00, the "costs of the arbitration" of $17,411.83, and the reasonable attorney's fees of $126,113.34 for a total award in favor of the Claimants against Design Gaps, LLC only in the amount of $296,409.17.

## Award

Claimants are entitled to recover $152,884.00 for all claims asserted against Design Gaps, Inc. in this proceeding[2] and the prevailing party shall be entitled to allowable fees and costs in the amount of $143,525.17 for a total award of $296,409.17

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

I, Thomas H. Coker Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

    AND IT IS SO ORDERED.

---

[2] I make no finding and no award upon any claim of personal liability of David Glover and Eva Glover. The parties agreed to reserve any such claims until a later date in another forum.

9

                                                               _____
                                                               Thomas H. Coker, Jr.

October 7, 2022